IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER ELEVEN |
| | : | |
| TRANSCONTINENTAL REFRIGERATED LINES, INC. | : | BANKRUPTCY NO.: 5-08-bk-50578-JJT |
| | : | |
| DEBTOR | : | |
| | : | |
| TRANSCONTINENTAL REFRIGERATED LINES, INC. by LAWRENCE V. YOUNG, ESQUIRE, LIQUIDATING AGENT | : | {**Nature of Proceeding**: Amended Motion to Overrule Handler Thayer & Duggan's Objections to Production of Documents Based on Attorney-Client Privilege (#130)} |
| PLAINTIFF | : | |
| | : | |
| vs. | : | |
| | : | |
| NEW PRIME, INC.; STEPHEN P. HROBUCHAK; JANIS HROBUCHAK; NICOLE HROBUCHAK; STEPHEN HROBUCHAK; DAVID HROBUCHAK; LILY LAKE FAMILY TRUST; S&M LEASING, INC.; CHERRY MARINE, LLC; KEVIN DAVIS; JOHN DOE; ERIC KALNIS; JAMES DUGGAN; HANDLER, THAYER & DUGGAN; and HANDLER THAYER, LLP, | : | |
| | : | |
| DEFENDANTS | : | **ADVERSARY NO.: 5-10-ap-00092-JJT** |

# OPINION[1]

Document number 130 in the above-captioned adversary proceeding is an "Amended Motion to Overrule Handler Thayer & Duggan's Objections to Production of Documents Based on Attorney-Client Privilege." The categories of documents subject to the assertion of the attorney-client privilege are set forth in the Motion at ¶¶ 4, 7-9. Cutting right to the chase of this matter, the issue centers around who the law firm of Handler Thayer & Duggan, (hereinafter

---

[1] Drafted with the assistance of Richard P. Rogers, Law Clerk, and Scott C. Denlinger, Judicial Extern.

"HTD"), represented in an underlying asset-purchase agreement between the Debtor and New Prime. If HTD is found to have represented the Debtor, Transcontinental Refrigerated Lines, Inc., then the Debtor, through the Liquidating Agent, waives any assertion of an attorney-client privilege. In that regard, the Liquidating Agent asserts that Stephen Hrobuchak, owner and sole shareholder of the Debtor, does not have the authority to invoke the attorney-client privilege thereby shielding document production requested to HTD. All parties acknowledge that HTD represented Mr. Hrobuchak individually, but HTD asserts it never represented the corporate Debtor in an underlying subject asset-purchase agreement.

At the hearing during colloquy with the parties, it was determined that the Court would first make a determination as to the extent of the representation by the law firm, i.e., did the law firm represent the corporate Debtor? If that finding was made, then the Court would do an *in camera* review of the disputed documents to determine whether an attorney-client privilege claim was sustainable. The Liquidating Agent argued that he needed to present a *prima facie* showing that the law firm represented the corporate Debtor. For its part, HTD argued that more than a theory was required and that "hard facts" had to be presented for the Court to make that determination of representation before it did an *in camera* review. Neither party presented testimony and requested the Court to rely on the Motion and the response thereto together with the attachments to each. Because all parties involved are intrinsically knowledgeable of the underlying facts leading up to the filing of the Complaint, a detailed recitation of those facts is unnecessary, and only those facts required to render the Court's decision will be stated.

The Liquidating Agent directs the Court's attention to several compelling acknowledgments by Stephen Hrobuchak as to the extent of the representation of HTD in the

subject asset-purchase agreement with New Prime. Those admissions, or acknowledgments, come by way of two depositions of Mr. Hrobuchak. Evidence of representation of the corporate Debtor is found in Exhibit E to the Motion at page 37, lines 4 through 14[2]; page 56, lines 6 through 22[3]; and page 83, lines 13 through 16[4]. (These references to pages and lines of exhibit E are also referenced in paragraph 23 of the underlying Amended Motion.) Additionally, email communications between attorneys at HTD, New Prime's attorney, and Mr. Hrobuchak, indicate that HTD was actively working on the negotiation and drafting of the asset-purchase agreement. See Exhibit F to the Motion. (These exhibits are referenced in paragraph 31 of the Amended Motion.) See also Exhibit G to the Motion which are emails from Attorney Kalnins to Mr. Hrobuchak. In addition, the emails referenced in Exhibits F and G seem to indicate a significant crossover between the representation of the Debtor and Hrobuchak, individually.

---

[2]  Q.   Did you ever have discussions with Handler, Thayer & Duggan as to how they were going to be remunerated for the services that they were providing you?
   A.   In what transaction?
   Q.   Handler, Thayer & Duggan were your lawyers, correct?
   A.   They handled two transactions though, which one?
   Q.   Which transactions did they handle?
   A.   The real estate or the asset purchase.

[3]  Q.   How did you personally come to be represented by Handler, Thayer & Duggan?
   A.   MR. MCNULTY: I'm going to object to the extent it requires him to reveal communications he would have had with Handler, Thayer & Duggan.
BY MR. SUTER:
   Q.   Don't tell me about any communications that you had with Handler, Thayer & Duggan, but I'd like to know how you came to be represented by Handler, Thayer & Duggan?
   A.   Basically from lack of lawyers in this area who knew how to do the types of transactions I needed done.
   Q.   And what types of transactions were those?
   A.   To set up a new trust and to do the asset sale all in one, one firm to do it all.

[4]  Q.   Did anybody from Handler, Thayer & Duggan have discussions with New Prime on behalf of TRL?
   A.   Eric Kalnins.

In response, HTD indicates, both in its brief in opposition and at the hearing on this matter, that Mr. Hrobuchak was confused by the questions posed to him during a November 2008 deposition concerning HTD's representation. Mr. Hrobuchak testified during the October 2010 deposition that HTD did not represent the Debtor. See Exhibit A to Brief in Opposition at lines 6 through 11. Did Mr. Hrobuchak in the October 14, 2010 deposition testimony correct the earlier "confusion" that HTD alleges he had in the 2008 deposition when asked the extent of HTD's representation? Mr. Hrobuchak testified that the HTD law firm represented his interest in the sale of the lands in Pittston Township as well as his interest in the asset-purchase agreement with New Prime. See Exhibit E, pages 8-9, lines 23 through 7. However, when asked what impact the asset-purchase agreement had on Mr. Hrobuchak's personal interests, including that of his family trust, he testified that he really didn't know. See Exhibit E, page 23, lines 15 through 19. And again, when asked if any individuals of his family or himself or the trust had an ownership interest in any of the particular assets being sold in the asset-purchase agreement, Mr. Hrobuchak answered, "I would have to say no." See Exhibit E, page 24, lines 18 through 22. Moreover, in the deposition of November 17, 2008, (found at Exhibit D), the following testimony is elicited.

> Q. Who paid the law firm? For the record, the firm is Handler, Thayer & Duggan, LLC.
> A. Who paid them?
> Q. Mm-hmm.
> A. For?
> Q. Whatever work they did in the New Prime transaction.
> A. TRL paid them for - - I'm sure for the - - for the asset part of the job, I would think. I'm pretty sure that's how it's gone. The trust paid them for the trust work.
> Q. Okay. Did you see them in any conflict position having represented both the trust and the corporation?
> A. No.

[K:\Cathy\Opinions-Orders filed 2011\5-10-ap-00092_
Transcontinental_Refrig_Lines.pdf]                    4

Case 5:10-ap-00092-JJT    Doc 208    Filed 12/28/11    Entered 12/28/11 16:09:32    Desc
                         Main Document       Page 4 of 7

Exhibit D to Amended Motion, page 201, lines 1 through 15.

When asked to clarify that testimony, Mr. Hrobuchak indicated that what he was trying to say was that if HTD did work for the Debtor for the asset-purchase agreement, the Debtor would have paid for that work. "I was giving sort of a theoretical answer there." See Exhibit E, pages 18-19, lines 10 through 15.

As mentioned earlier, no testimony was elicited at the time of the hearing including that of a representative from HTD. In support of HTD's position is an Affidavit of Eric Kalnins, (HTD counsel), attached as an exhibit to the Brief in Opposition to the Liquidator's Motion to Compel. See Doc. #139 at Exhibit C. The Affidavit attempts to refute handwritten notes on Exhibit H to the Liquidator's Motion to Compel, which is a document entitled "Wire Instructions for HT&D." Handwritten notes by Mr. Kalnins indicate that a $21,860.48 payment was to be made "from TRL Inc. sale proceeds" and payable to HTD. Also, a $24,573.63 payment was to be made to HTD "from real estate proceeds." Mr. Kalnins' Affidavit states that the handwritten note indicates the $21,860.48 payment was to be made from Mr. Hrobuchak for legal services that HTD provided him personally with regard to his assets and sale of Transcontinental assets to New Prime. This Affidavit made in that regard contradicts Mr. Hrobuchak's testimony that his personal interests were not impacted by the underlying asset-purchase agreement transaction. While the HTD law firm had ample opportunity to participate at the hearing, for unknown reasons it chose not to. The Court hereby gives little weight to the contents of the Affidavit filed by Mr. Kalnins.

The burden of establishing the existence of the attorney-client relationship between the Debtor and HTD is with the Liquidating Agent. *Capitol Surgical Supplies, Inc. v. Casale*, 86

Fed.Appx. 506, 508, 2004 WL 180412 (3d Cir. 2004). Further, with there being no expressed contract between the Debtor and HTD, the Liquidating Agent further had the burden to establish the existence of an implied attorney-client relationship. In that regard,

> Under Pennsylvania law, an implied attorney-client relationship is shown if (1) the purported client sought advice or assistance from the attorney; (2) the assistance sought was within the attorney's professional competence; (3) the attorney expressly or impliedly agreed to provide such assistance; and (4) it is reasonable for the putative client to believe that the attorney was representing him. *Atkinson v. Haug*, 424 Pa.Super. 406, 622 A.2d 983,986 (1993). A request for legal services, and an agreement to provide legal services, are necessary elements to form an attorney-client relationship. *Cost v. Cost*, 450 Pa.Super. 685, 677 A.2d 1250, 1254-55 (1996).[5]

*Id.* at 508.

Based upon a review of the record, the Court finds that all four elements listed above were established by the Liquidating Agent. While HTD has argued that Mr. Hrobuchak was confused concerning questions directed to the representation of both himself and his family and the corporate Debtor, the Court finds to the contrary. Hr. Hrobuchak was emphatic in both the 2008 and 2010 depositions that HTD was requested by Mr. Hrobuchak as sole shareholder to represent the corporate Debtor in the asset sale transaction with New Prime. That, in itself, is sufficient to meet the first and fourth prongs listed above. As to the second prong, Mr. Hrobuchak testified that he sought out a firm to set up a trust and to do the asset sale altogether. In other words, one law firm to do all the required work on the sale of the real estate and asset-purchase agreement. See Exhibit E, page 83, lines 13 through 17. Finally, as to the third prong as referenced above, the Court finds sufficient evidence in the several emails which are

---

[5] None of the parties raised an issue as to which state law applies concerning the establishment of the attorney-client relationship. With the Debtor having a principal place of business in Luzerne County, Pennsylvania, the Court will apply Pennsylvania law to this issue.

referenced in paragraph 31 of the underlying Motion as support that HTD did agree to provide assistance in the asset-purchase agreement. See Emails attached as Exhibits F and G.

It is for all the foregoing reasons that the Court finds there was an attorney-client relationship between the corporate Debtor and HTD. Furthermore, no one has challenged whether the Liquidating Agent has authority to waive the attorney-client privilege on behalf of the corporate Debtor. The Court finds that the Liquidating Agent does have the authority to waive the attorney-client privilege on behalf of the Debtor and will proceed to an *in camera* review of the disputed documents to determine if the privilege asserted on behalf of Mr. Hrobuchak will protect the documents. On or within thirty (30) days of the date of this Opinion and attached Order, HTD is directed to deliver those documents to this Court's Chambers.

My Order will follow.

By the Court,

John J. Thomas, Bankruptcy Judge
(CMS)

Date: December 28, 2011